UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE BRITANNIA BULK HOLDINGS  :   Master File No. 08-cv-09554(DLC)
INC. SECURITIES LITIGATION      :   This Document Relates To: All Actions

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR RELIEF FROM ORDER**

Ralph M. Stone (rstone@lawssb.com)
Patrick L. Rocco (procco@lawssb.com
**SHALOV STONE BONNER & ROCCO LLP**
485 Seventh Avenue, Suite 1000
New York, NY 10018
Telephone (212) 239-4340
Facsimile (212) 239-4310

December 30, 2009            *Attorneys for Plaintiff-Movant Robert Wildes*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE BRITANNIA BULK HOLDINGS   :   Master File No. 08-cv-09554(DLC)
INC. SECURITIES LITIGATION      :   This Document Relates To: All Actions

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR RELIEF FROM ORDER

Class member Robert Wildes, by and through his attorneys, Shalov Stone Bonner & Rocco LLP ("SSB&R"), respectfully submits this memorandum of law in support of his motion, pursuant to Rule 60(b)(6), Fed. R. Civ. P., for relief from the Court's December 21, 2009 Order closing the case and its February 18, 2009 Case Management Order (the "Lead Plaintiff Order" or the "Order") appointing Lead Plaintiff and Lead Counsel in the above-captioned securities fraud class action.

## PRELIMINARY STATEMENT

Following the filing of several securities class actions asserted on behalf of a class of persons who purchased the common stock of Britannia Bulk Holdings Inc. ("Britannia") in connection with its initial public offering and thereafter in the market, these cases were consolidated under the above caption and the conventional lead plaintiff motion practice ensued, and the Court then appointed a lead plaintiff and lead counsel in the action. That lead plaintiff and lead counsel thereafter filed a Consolidated Class Action Complaint (the "CAC"). Rather than asserting claims under both the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"), as at least one of the prior complaints

- 1 -

had done, the CAC only asserted Securities Act claims relating to statements made in a June 2008 prospectus.

By Opinion and Order dated October 19, 2009, dismissing the case, this Court held that because the October 2008 stock price declines specifically related to matters occurring in July 2008 (and thus after the June IPO), these stock price declines necessarily could not be connected to any statement or alleged omission in the June 2008 prospectus. The Court thus dismissed the Securities Act claims on a Rule 12(b)(6) motion to dismiss, crediting defendants' affirmative defense of lack of loss causation associated with anything stated or omitted to be stated in the June 2008 Prospectus.

In contrast with lead plaintiff Wahl, who purchased his shares exclusively in June 2008, Movant Wildes purchased his Britannia shares in August and September 2008, after the events in question cited by defendants as causative started occurring and also after certain defendants made other statements that were directly contrary to the matters disclosed in October 2008. As a result, Movant Wildes enjoys Exchange Act Section 10(b) claims that have not been asserted by lead plaintiff Wahl. Those Exchange Act claims have not been tested and are not subject to the same causation issues that ultimately proved to be the undoing of the Prospectus-based claims.

Lead counsel for plaintiffs has confirmed that the decision to drop the Exchange Act claims was a deliberate tactical one. *See* Findings of Fact filed on December 22, 2009 (at para 4, commenting on the decision to carefully narrow the allegations). In combination with the Court's Opinion and Order dismissing the case, Lead Counsel's strategic choice left a significant portion of the class with no remedy in the pending case, even though they enjoyed previously asserted Exchange Act claims that are still viable.

Because the Exchange Act claimants during the relevant time are entitled to representation, this Court should reopen the case, appoint Movant Wildes as lead plaintiff and the undersigned counsel as Lead Counsel for these stock purchasers, and allow the Exchange Act claims to be pursued. These claims do not suffer from the same defects as the Securities Act claims, are not time-barred and have never been tested or dismissed. Ultimately, as explained below, without the relief requested herein, these aftermarket share purchasers may be denied any chance at a recovery notwithstanding the substantial losses they suffered and notwithstanding that their separate claims have not been given full process.

## FACTUAL AND PROCEDURAL BACKGROUND

Following a stunning market reversal and collapse of Britannia only a few short months after its IPO, on November 6, 2008, the first complaint in this consolidated action was filed alleging violations of the federal securities laws against Britannia, certain of its executive officers and directors and the underwriters of its initial public offering. Several other complaints were filed in the weeks thereafter. While all the complaints asserted Securities Act claims, some plaintiffs asserted Exchange Act claims as well. By Case Management Order dated February 18, 2009, the Court consolidated these various actions into the above-captioned proceeding for all purposes. *See* Docket Entry No.24.

By the same Order, following customary lead plaintiff motion practice, the Court appointed Edward Wahl ("Wahl" or the "Lead Plaintiff") to serve as Lead Plaintiff and approved his selection of counsel as Lead Counsel for the class. *See* Docket Entry No. 24. Notably, Movant Wildes's losses, which exceed $215,000, were the second largest of the lead plaintiff applicants at the time of that contest. Movant Wildes stands by his early declarations attesting to

his understanding of the role of a lead plaintiff and his desire to pursue this action. *See* Declaration of Robert Wildes in Support of Motion for Relief From Order, filed concurrently herewith. Copies of Movant Wildes's certification forms, a declaration previously submitted by him, and the firm resume of Shalov Stone Bonner & Rocco LLP, all of which were previously submitted, are annexed hereto as exhibits 1, 2 and 3.

On May 1, 2009, Wahl filed the CAC. Rather than asserting both Securities Act and Exchange Act claims, the CAC only asserted Securities Act claims relating to Britannia's June 2008 prospectus. The CAC dropped any references to statements made in the aftermarket, particularly statements made in August 2008.

Following the Rule 12(b)(6) motion practice and dismissal, the Court requested that lead counsel advise the Court what its intentions were with respect to certain remaining defendants and later requested a set of proposed findings of fact and conclusions of law. These submissions, including the voluntary dismissal of remaining claims, combined with a failure to request leave to file an amended complaint, clearly signal that lead counsel for plaintiffs are discontinuing further pursuit of the case.

Because Wahl's complaint focused on the IPO, and perhaps because Wahl only purchased Britannia stock in June 2008, the CAC did not address certain key facts that occurred after the IPO. For example, among the matters ignored by the CAC are certain statements in a Report on Form 6-K filed by Britannia with the Securities and Exchange Commission (SEC) on August 4, 2009 and signed by certain of the individual defendants. In that filing, Britannia repeated its mantra that it uses forward freight agreements (FFAs) as economic hedges against current and anticipated cargo positions. It also repeated the statement that it uses FFAs to

- 4 -

manage financial risk. Pertinently, it also stated in a discussion of contracts of affreightment (COAs):

> We are therefore exposed to a decrease in charter rates or our inability to fully employ our chartered in vessels through COAs, time charters or sport charters. *We have recently started to hedge some of these exposures through forward freight agreements, or FFAs.* (Emphasis added.)

Taken together, these statements irrefutably indicated that Britannia was using FFAs to hedge against decreasing charter rates.

In fact, completely contrary to those statements, by late July 2008, Britannia was actually increasing its exposure to declining charter rates. Thus, in the midst of its corporate collapse it disclosed on October 28, 2008:

> Since July 2008, the Company bought FFAs that appear not to have been purchased to hedge identifiable ship or cargo positions. This resulted in the Company being more exposed to the falling charter rates and reduced overall demand for dry bulk shipping services than it would have been if its historic practice of using FFAs as economic hedges had been followed.

Thus, on October 28, 2008, Britannia admitted that in August 2008, when it said it was hedging its exposures to declining rates, it was actually increasing them. These facts, among others, support a viable Exchange Act claim for purchasers of Britannia stock in the period commencing on August 4, 2008 until its collapse at the end of October 2008.

## ARGUMENT

Rule 60, Fed. R. Civ. P., provides that, "[o]n motion and just terms, the court may relieve a party or its legal representatives from a final judgment, order, or proceeding for ... any other reason that justifies relief." Rule 60(b)(6), Fed. R. Civ. P. Rule 60(b)(6) "confers broad discretion on the trial court to grant relief when 'appropriate to accomplish justice.'" *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986) (citations omitted). It is properly invoked when there are "extraordinary circumstances," or where the judgment or order may work "an extreme or undue hardship," and "should be liberally construed when substantial justice will thus be served." *Id.* (numerous citations omitted.)

It would serve the interests of justice to (a) reopen the case, (b) allow Movant Wildes to become the lead plaintiff of this case, and (c) afford him the opportunity to file an amended complaint that asserts the untested Exchange Act claims relating to the July 2008 events and subsequent disclosures.

Unlike lead plaintiff Wahl, Movant Wildes and many other purchasers of Britannia stock made their purchases after the initial public offering and after the causation-related July 2008 events of note in this case. It simply would not be just to the putative class for these claims to be dropped without further efforts. Lead counsel in this case, whose client is not suitable to represent these later purchasers in light of the Court's dismissal decision, has also made clear their intention not to pursue this case further.

Movant Wildes remains eager to pursue the claims in this case. We are unaware of any reason why he could be deemed inadequate for this task, and the only reason he was not

previously appointed lead plaintiff was because his losses were exceeded by those of lead plaintiff Wahl.

This motion also serves the interest of judicial efficiency as it avoids the addition of another duplicative case filing which would likely be assigned to this Court as a related case in any event.

Under these circumstances, relief from the Court's closure of the case and the February 18, 2009 Case Management Order appointing Lead Plaintiff and Lead Counsel is appropriate. Specifically, Wildes respectfully requests that the Court reopen the case and relieve Wildes and other Britannia share purchasers from the Court's February 18, 2009 Order, and:

(i) appoint Wildes as Lead Plaintiff for a Class of purchasers of Britannia stock;

(ii) approve Wildes's selection of Shalov Stone Bonner & Rocco LLP as Lead Counsel for that Class; and

(iii) set a schedule for the filing of an amended complaint by Wildes on behalf of itself and all other members of the Class.

## **CONCLUSION**

For all the foregoing reasons, Wildes respectfully requests that the Court grant this motion and: (i) reopen the case, (ii) appoint Wildes as Lead Plaintiff for the Class of purchasers of Britannia stock; (iii) approve Wildes's selection of Shalov Stone Bonner & Rocco LLP as Lead Counsel for that Class; and (iv) set a schedule for the filing of an amended complaint by Wildes on behalf of itself and all other members of the Class.

Dated: December 30, 2009                                Respectfully submitted,

 

**SHALOV STONE BONNER & ROCCO LLP**

By:   /s/ Ralph M. Stone
      Ralph M. Stone (rstone@lawssb.com)
      Patrick L. Rocco (procco@lawssb.com)

485 Seventh Avenue, Suite 1000
New York, NY 10018
Telephone (212) 239-4340
Facsimile (212) 239-4310

*Attorneys for Plaintiff-Movant Robert Wildes*