UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :          MASTER FILE
IN RE BRITANNIA BULK HOLDINGS INC.      :     08 Civ. 9554 (DLC)
SECURITIES LITIGATION                   :
                                        :     OPINION & ORDER
----------------------------------------X

Appearances:

For Movant Robert Wildes:
Ralph M. Stone
Patrick L. Rocco
Shalov Stone Bonner & Rocco LLP
485 Seventh Avenue, Suite 1000
New York, NY 10018

For Lead Plaintiff Edward Wahl:
Michael K. Yarnoff
Karen E. Reilly
Barroway Topaz Kessler Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087

For the Underwriter Defendants:
William McGuinness
Peter L. Simmons
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980

For Defendants Fehrn-Christensen, Halsted, Khanbabi, and Sinders:
Michael G. Bongiorno
Justina L. Geraci
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022

For Defendant Arvid Tage:
Mark S. Cohen
Sandra C. McCallion
Daniel H. Tabak
Cohen & Gresser LLP
100 Park Avenue, 23rd Floor
New York, NY 10017

DENISE COTE, District Judge:

Putative class member Robert S. Wildes ("Wildes") filed
this motion under Federal Rule of Civil Procedure 60(b)(6)
seeking to reopen the case, be appointed as lead plaintiff, and
file an amended complaint.  For the following reasons, the
motion is denied.

BACKGROUND

The factual background to this lawsuit is set out in the
Court's October 19, 2009 Opinion and Order (the "October 19
Opinion"), which dismissed all claims against the Underwriter
Defendants and against defendants Fehrn-Christensen, Halsted,
and Sinders.  In re Britannia Bulk Holdings Inc. Sec. Litig.,
No. 08 Civ. 9554 (DLC), __ F. Supp. 2d __, 2009 WL 3353045
(S.D.N.Y. Oct. 19, 2009).  Familiarity with the underlying facts
is assumed.

On November 6, 2008, plaintiff Steven Button filed a class
action lawsuit on behalf of all persons or entities who acquired
common stock in Britannia Bulk Holdings Inc. ("Britannia")
pursuant to or traceable to Britannia's allegedly false and
misleading Registration Statement and Prospectus issued in
connection with its June 17, 2008 initial public offering (the
"IPO").  Thereafter, six other putative class actions were also
filed against Britannia or its officers and directors and

2

assigned to this Court.  An Order dated December 12, 2008
directed all parties interested in serving as lead plaintiff to
so move by January 5, 2009.

On January 5, 2009, Wildes filed a motion, on behalf of
himself and others,[1] seeking appointment as lead plaintiff in
this consolidated action pursuant to the Private Securities
Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77z-1(a)(3)(B),
78u-4(a)(3)(B).  Four other individuals or groups, including
Edward Wahl ("Wahl"), also moved to be appointed as lead
plaintiff.  On February 13, a conference was held on the record
to consider these applications.  On February 18, the Court
issued a case management order (the "February 18 Order")
consolidating the seven pending lawsuits under the above caption
and appointing Wahl as lead plaintiff.[2]

Thereafter, on May 1, 2009, Wahl filed his consolidated
amended complaint (the "CAC") naming Britannia, four
underwriters, and five individuals as defendants.  The CAC
asserted various claims under the Securities Act of 1933 (the
"Securities Act"), but did not make claims under the Securities
Exchange Act of 1934 (the "Exchange Act").  It defined the class

---

[1] The members of the "WLC Lead Plaintiff Group" included Wildes,
Leon Landa, Coachella Insurance Co., and Act One Holdings.

[2] The reasons Wildes was not chosen as a lead plaintiff included
that he did not suffer the largest investment loss and had not
invested in the IPO.

as "all persons or entities who purchased shares of Britannia
Bulk common stock pursuant to, or traceable to, the Company's
IPO and were damaged thereby."  On June 12, all defendants
except Britannia filed motions to dismiss the CAC,[3] and these
motions became fully submitted on July 17.  The October 19
Opinion dismissed all challenged claims except for the Section
15 claims against Tage and Khanbabi.  On November 20, Wahl filed
a notice of voluntary dismissal as to all remaining claims, and
on December 21, the Court adopted Wahl's proposed findings of
fact and conclusions of law pursuant to 15 U.S.C. § 77z-1(c)(1)
and directed the Clerk of Court to close the case.  No class was
ever certified.

    Wildes now moves under Rule 60(b)(6) seeking relief from
the February 18 and December 21 Orders.  He asserts that Wahl
failed to represent the interests of the entire plaintiff class
because the CAC did not assert any claims under the Exchange
Act, thereby "le[aving] a significant portion of the class with
no remedy in the pending case."  In particular, Wildes notes
that the CAC failed to include certain false and misleading
statements made by Britannia in its August 2008 public filings
with the SEC, statements that Wildes asserts would support a

_____

[3] Britannia entered into Chapter 15 bankruptcy proceedings in the
United States on June 11, 2009.

claim under Section 10(b) of the Exchange Act.[4]   Wildes
speculates that Wahl neglected to include the Exchange Act
claims because Wahl "purchased his shares exclusively in June
2008" pursuant to the IPO, whereas Wildes "purchased his
Britannia shares in August and September 2008" in the
aftermarket.   Wildes argues that his Section 10(b) claims "have
never been tested or dismissed," are not time-barred, and "do
not suffer from the same defects as the Securities Act claims."
To that end, Wildes seeks an Order reopening the case,
appointing Wildes as lead plaintiff, and allowing Wildes to file
an amended complaint to pursue the untested Section 10(b)
claims.

DISCUSSION

Rule 60(b)(6) provides, in pertinent part, that a court
"may relieve a party or its legal representative from a final
judgment, order, or proceeding for . . . any other reason that

---

[4] Wildes's motion papers explain that, in Britannia's August
report to the SEC,

> Britannia repeated its mantra that it uses forward
> freight agreements (FFAs) as economic hedges against
> current and anticipated cargo positions.  It also
> repeated the statement that it uses FFAs to manage
> financial risk. . . . Taken together, these statements
> irrefutably indicated that Britannia was using FFAs to
> hedge against decreasing charter rates.

Wildes has not, however, submitted a proposed amended pleading.

justifies relief."  The Rule "confers broad discretion on the
trial court to grant relief when appropriate to accomplish
justice and it constitutes a grand reservoir of equitable power
to do justice in a particular case."  Marrero Pichardo v.
Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted).
"Relief [under Rule 60(b)(6)] is warranted where there are
extraordinary circumstances, or where the judgment may work an
extreme and undue hardship, and should be liberally construed
when substantial justice will thus be served."  United Airlines,
Inc. v. Brien, 588 F.3d 158, 176 (2d Cir. 2009) (citation
omitted); see also Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir.
2009) (Rule 60(b)(6) relief "should be granted only in
extraordinary circumstances"); United States v. Int'l Bhd. of
Teamsters, 247 F.3d 370, 391 (2d Cir. 2001) (Rule 60(b) relief
is "generally not favored").  Rule 60(b)(6) motions "must be
made within a reasonable time"; in determining the timeliness of
a Rule 60(b)(6) motion, the court "look[s] at the particular
circumstance of each case and balance[s] the interest in
finality with the reasons for delay."  Grace v. Bank Leumi Trust
Co., 443 F.3d 180, 190 n.8 (2d Cir. 2006) (citation omitted).

    Wildes has not demonstrated that relief is warranted under
Rule 60(b)(6).  First, as he is neither a "party" nor a "legal
representative" of a party in this action, Wildes does not have
standing to obtain Rule 60(b)(6) relief.  While the "principles

6

governing standing" under Rule 60 are "sufficiently flexible to permit a finding of standing" where a non-party is "sufficiently connected and identified with the suit," the general principle remains that non-parties may not obtain relief from judgment pursuant to Rule 60(b)(6).  Grace, 443 F.3d at 188 (citation omitted); see also Dunlop v. Pan Am. World Airways, Inc., 672 F.2d 1044, 1052 (2d Cir. 1982) ("Rule 60(b)(6) would not ordinarily be available to non-parties to modify final judgments . . . .").  The Court of Appeals has extended standing under Rule 60 to non-parties only twice -- in Dunlop and in Grace -- and each time the Second Circuit expressly limited its holding to the facts.[5]  See Grace, 443 F.3d at 188.  The circumstances of this litigation do not resemble those of either Dunlop or Grace.[6]

---

[5] In Grace, the Court of Appeals held that a third party has standing under Rule 60(b) "where plaintiffs enter into a settlement agreement with a judgment-proof, pro se defendant with the intent . . . to collect from a third party" and plaintiffs later "use the judgment as a predicate for a fraudulent conveyance action against the third party."  Grace, 443 F.3d at 188.  In Dunlop, the court held that employees who were victims of age discrimination had standing to move to amend a stipulation of dismissal in a federal lawsuit between the Secretary of Labor and their employer, where the employees' state-law claims were barred by the terms of the settlement even though the Secretary had previously assured the employees that any federal settlement would not affect their state-law claims. Dunlop, 672 F.2d at 1052.

[6] In a recent securities case appealed to the Second Circuit involving Rule 60(b)(6) motions by non-party shareholders within a putative plaintiff class, the Second Circuit expressly declined to apply Dunlop and Grace and held that the movants did

Second, even if Wildes had standing to request post-judgment relief, Wildes's motion is untimely.  While Rule 60(b) provides only that a motion may be brought within a "reasonable time," and no particular time limit applies, Rule 60(b)(6) relief may be denied "where the applicant fails to move for relief promptly."  <u>Grace</u>, 443 F.3d at 190 n.8 (citation omitted).  Wildes's challenge to Wahl's appointment as lead plaintiff can hardly be construed as "prompt" when it comes ten months after the February 18 Order and when Wildes was given an opportunity to be heard at the February 13 conference regarding any concerns with Wahl's suitability.[7]

Third, even if Wildes's motion were not procedurally deficient, the motion has not "raised issues sufficiently extraordinary to justify relief" under Rule 60(b)(6).  <u>United</u>

---

not have standing where the movants were class members rather than named or lead plaintiffs.  <u>Federman v. Artzt</u>, 339 F. App'x 31, 2009 WL 2223492 (2d Cir. July 23, 2009).

[7] Wildes implies, but does not assert, that Wahl lacked standing to bring the Exchange Act claims that Wildes could plead.  Even if this were true, which Wildes has not shown, "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."  <u>Hevesi v. Citigroup Inc.</u>, 366 F.3d 70, 82 (2d Cir. 2004.  Rather, "it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."  <u>Id.</u>  The notion "that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action . . . has been rejected repeatedly by courts in this Circuit and undermines the purpose of the PSLRA."  <u>Id.</u> at 82 n.13 (citation omitted).

<u>Airlines</u>, 588 F.3d at 176.  Wahl asserts in opposition to
Wildes's motion that his decision not to pursue Exchange Act
claims in the CAC "was based exclusively on a thorough,
extensive investigation of the facts and the ultimate
determination that the facts as known did not support a good-
faith basis to bring a 10(b) claim."  Indeed, Wildes appears to
concede that Wahl's "decision to drop the Exchange Act claims
was a deliberate tactical one."  To the extent that that
tactical choice "left a significant portion of the class with no
remedy in the pending case," Wildes was on notice of this as
soon as the CAC was filed.  Given that Wildes thereafter made
his own tactical choice to allow the litigation to proceed, he
may not, upon becoming dissatisfied with those results, seek to
reopen this litigation.  See <u>Ackermann v. United States</u>, 340
U.S. 193, 198 (1950) ("There must be an end to litigation
someday, and free, calculated, deliberate choices are not to be
relieved from [under Rule 60(b)(6)].")

    Finally, reasons of policy weigh strongly in favor of
denying this motion.  The PSLRA created a procedure requiring a
court to appoint as lead plaintiff "the member or members of the
purported plaintiff class that the court determines to be most
capable of adequately representing the interests of class
members."  15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i).
Granting this motion and appointing Wildes as lead plaintiff

would circumvent the process contemplated by the PSLRA and deny

the putative class their opportunity to have the "most adequate

plaintiff" selected for them.   Id.

CONCLUSION

Wildes's December 30, 2009 motion to reopen the case is

denied.

SO ORDERED:

Date:     New York, New York
          February 9, 2010

                                    _____
                                       DENISE COTE
                                    United States District Judge